**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

GUARDIAN MEDIA TECHNOLOGIES, LTD.,

      Plaintiff,

      v.

| | |
|---|---|
| (1) | ACER AMERICA CORPORATION; |
| (2) | APEX DIGITAL, INC.; |
| (3) | AT&T INC.; |
| (4) | CONN'S INC.; |
| (5) | FUJITSU AMERICA, INC.; |
| (6) | FUJITSU LIMITED; |
| (7) | GAMESTOP CORP.; |
| (8) | HAIER AMERICA TRADING, L.L.C.; |
| (9) | HISENSE USA CORPORATION; |
| (10) | HOPPER RADIO OF FLORIDA, INC.; |
| (11) | IMATION CORP.; |
| (12) | J & R ELECTRONICS INC.; |
| (13) | LASONIC ELECTRONICS CORPORATION; |
| (14) | LENOVO (UNITED STATES) INC.; |
| (15) | MEMOREX PRODUCTS, INC.; |
| (16) | MICRO CENTER SALES CORPORATION; |
| (17) | MICROSOFT CORPORATION; |
| (18) | MOTOROLA, INC.; |
| (19) | OFFICE DEPOT, INC.; |
| (20) | ON CORP US, INC.; |
| (21) | PROTON INTERNATIONAL AMERICA, INC.; |
| (22) | PROTRON DIGITAL CORPORATION; |
| (23) | RENT-A-CENTER, INC.; |
| (24) | ROBERT BOSCH, LLC; |
| (25) | SKYWORTH ELECTRONICS, INC.; |
| (26) | SOUND AROUND INC.; |
| (27) | STAPLES, INC.; |
| (28) | STARLITE CONSUMER ELECTRONICS (USA) INC.; |
| (29) | STARLITE INTERNATIONAL HOLDINGS, LTD.; |
| (30) | TATUNG COMPANY OF AMERICA, INC.; |

CIVIL ACTION NO. _____


**JURY TRIAL DEMANDED**

(31)   TIGERDIRECT, INC.;
(32)   TIVO INC.;
(33)   TTE TECHNOLOGY, INC.;
(34)   VERIZON COMMUNICATIONS INC.;
(35)   VIDEOLAND, LLC; AND
(36)   VIEWSONIC CORPORATION.

Defendants.

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff GUARDIAN MEDIA TECHNOLOGIES, LTD. files this Original Complaint against the above-named Defendants, alleging as follows:

## PARTIES

1.      Guardian Media Technologies, Ltd. ("Guardian") is a Texas limited partnership.  Guardian has its principal place of business in Longview, TX.

2.      Upon information and belief, Defendant Acer America Corporation ("Acer") is a corporation organized and existing under the laws of the State of California with its principal place of business located at 333 West San Carlos Street, Suite 1500, San Jose, California 95110.  Acer can be served via its registered agent for service of process: CT Corporation System, 350 N. St. Paul St., Suite 2900; Dallas, Texas 75201-4234.

3.      Upon information and belief, Defendant Apex Digital, Inc. ("Apex") is a corporation organized and existing under the laws of the State of California with its principal place of business located at 301 Brea Canyon Road, Walnut, California 91789.  Apex can be served via its agent for service of process:  Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.

4.      Upon information and belief, Defendant AT&T Inc. ("AT&T") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 208 S. Akard St., Dallas, TX 75202.  AT&T can be

served via its registered agent for service of process:  CT Corporation System, 350 N. St. Paul St., Suite 2900; Dallas, Texas 75201-4234.

5.      Upon information and belief, Defendant Conn's Inc. ("Conn's") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3925 College Street, Beaumont, Texas 77701. Conn's can be served via its registered agent for service of process: CT Corporation System, 350 N. St. Paul, Ste. 2900, Dallas, TX 75201-4234.

6.      Upon information and belief, Defendant Fujitsu America, Inc. ("Fujitsu America") is a corporation organized and existing under the State of California with its principal place of business located at 1250 East Arques Avenue, MS122, Sunnyvale, California 94085.  Fujitsu America can be served via its registered agent of process:  CT Corporation System, 350 N. St. Paul St., Suite 2900; Dallas, Texas 75201-4234.

7.      Upon information and belief, Defendant Fujitsu Limited ("Fujitsu") is a corporation organized and existing under the laws of Japan with its principal place of business located at Shiodome City Center, 1-5-2 Higashi-Shimbashi, Minato-ku, Tokyo 105-7123, Japan.

8.      Upon information and belief, Defendant Gamestop Corp. ("Gamestop") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 625 Westport Parkway, Grapevine, TX 76051. Gamestop can be served via its registered agent of process:  CT Corporation System, 350 N. St. Paul St., Suite 2900; Dallas, Texas 75201-4234.

9.      Upon information and belief, Defendant Haier America Trading, L.L.C. ("Haier") is a limited liability company organized and existing under the laws of the State of New York with its principal place of business located at 1356 Broadway, New York, New York 10018.  Haier can be served via its agent for service of process:  Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.

10.     Upon information and belief, Defendant Hisense USA Corporation ("Hisense") is a corporation organized and existing under the laws of the State of Georgia with its principal place of business located at 101 Satellite Blvd., N.W., Suite A, Suwanee, Georgia 30024.  Hisense can be served via its agent for service of process:  Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.

11.     Upon information and belief, Defendant Hopper Radio of Florida, Inc., ("Hopper") is a corporation organized and existing under the laws of the State of Florida with its principal place of business located at 5400 Baroken Sound Blvd NW, Ste 100; Boca Raton, FL 33487.  Hopper can be served via its agent for service of process:  Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.

12.     Upon information and belief, Defendant Imation Corp. ("Imation") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 1 Imation Place, Oakdale, Minnesota 55128.  Imation can be served via its agent for service of process:  Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.

13.     Upon information and belief, Defendant J & R Electronics Inc. ("J & R Electronics") is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 23 Park Row, New York, NY 10038. J & R can be served via its agent for service of process:  Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.

14.     Upon information and belief, Defendant Lasonic Electronics Corporation ("Lasonic") is a corporation organized and existing under the laws of the State of California with its principal place of business located at 15759 Tapia Street, Irwindale, California 91706.  Lasonic can be served via its agent for service of process:  Office of the

Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.

15.     Upon information and belief, Defendant Lenovo (United States) Inc. ("Lenovo") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 1009 Think Place, Morrisville, North Carolina 27560.  Lenovo can be served via its registered agent for service of process:  CT Corporation System, 350 N. St. Paul St., Suite 2900; Dallas, Texas 75201-4234.

16.     Upon information and belief, Defendant Memorex Products, Inc. ("Memorex") is a corporation organized and existing under the laws of the State of California with its principal place of business located at 1 Imation place, ID-28; Oakdale MN 55128.  Memorex can be served via its agent for service of process:  Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.  Memorex is a portfolio brand of Imation.

17.     Upon information and belief, Defendant Micro Center Sales Corporation ("Micro Center") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 4055 Leap Road, Hilliard, OH 43026.  Micro Center can be served via its registered agent for service of process:  16055 Space Center, Suite 235, Houston, TX 77062.

18.     Upon information and belief, Defendant Microsoft Corporation ("Microsoft") is a corporation organized and existing under the laws of the State of Washington with its principal place of business located at One Microsoft Way, Redmond, Washington 98052-6399.  Microsoft can be served via its registered agent for service of process: Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company; 211 East 7th Street, Suite 620; Austin TX 78701-3218.

19.     Upon information and belief, Defendant Motorola, Inc. ("Motorola") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 1303 E. Algonquin Road, Schaumburg, Illinois.

5

Motorola can be served via its registered agent for service of process:  CT Corporation System, 350 N. St. Paul St., Suite 2900; Dallas, Texas 75201-4234.

20.     Upon information and belief, Defendant Office Depot, Inc. ("Office Depot") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 6600 North Military Trail, Boca Raton, FL 33496.  Office Depot can be served via its registered agent for service of process: Corporate Creations Network Inc., 4265 San Felipe, #1100, Houston, TX 77027.

21.     Upon information and belief, Defendant On Corp US, Inc. ("On Corp") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at Parkwood Crossing, 450 East, 96th Street, Suite 500, Indianapolis, Indiana 46240.  On Corp can be served via its agent for service of process: Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.

22.     Upon information and belief, Defendant Proton International America, Inc. ("Proton") is a corporation organized and existing under the laws of the State of California with its principal place of business located at 2540 Corporate Place, Suite B111, Monterey Park, California 91754.  Proton can be served via its agent for service of process:  Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.

23.     Upon information and belief, Defendant Protron Digital Corporation ("Protron") is a corporation organized and existing under the laws of the State of California with its principal place of business located at 3257 East Guasti Road, Suite 320, Ontario, California, 91761.  Protron can be served via its agent for service of process:  Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.

24.     Upon information and belief, Defendant Rent-A-Center, Inc. ("Rent-A-Center") is a corporation organized and existing under the laws of the State of Delaware

with its principal place of business located at 5501 Headquarters Drive, Plano, Texas 75024. Rent-A-Center's registered agent for service in Texas is CT Corporation System, 350 N. St. Paul, Ste. 2900, Dallas, TX 75201-4234.

25.     Upon information and belief, Defendant Robert Bosch, LLC ("Bosch") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 38000 Hills Tech Drive; Farmington Hills, MI 48331. Bosch can be served via its agent for service of process:  Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.

26.     Upon information and belief, Defendant Skyworth Electronics, Inc. ("Skyworth") is a corporation organized and existing under the laws of the State of California with its principal place of business located at 1312 John Reed Court, City of Industry, California 91745. Skyworth can be served via its agent for service of process: Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.

27.     Upon information and belief, Defendant Sound Around Inc. ("Sound Around") is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 1600 63rd Street, Brooklyn, New York 11204. Sound Around can be served via its agent for service of process:  Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701. Sound Around sells DVD players under the Pyle Audio brand.

28.     Upon information and belief, Defendant Staples, Inc. ("Staples") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at Five Hundred Staples Drive Framingham, MA 01702. Staples can be served via its agent for service of process:  Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.

29.     Upon information and belief, Defendant Starlite Consumer Electronics (USA) Inc. ("Starlite") is a corporation organized and existing under the laws of the State of Florida with its principal place of business located at 280 Machlin Court; City of Industry, CA 91789.  Starlite can be served via its agent for service of process:  Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.

30.     Upon information and belief, Defendant Starlite International Holdings, Ltd. ("Starlite Holdings") is a Bermuda corporation with its principal place of business located at 5/F., Shing Dao Industrial Building, 232 Aberdeen Main, Aberdeen, Hong Kong.

31.     Upon information and belief, Defendant Tatung Company of America, Inc. ("Tatung") is a corporation organized and existing under the laws of the State of California with its principal place of business located at 2850 El Presidio Street, Long Beach, California 90810. Tatung can be served via its agent for service of process:  Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.

32.     Upon information and belief, Defendant TigerDirect, Inc. ("TigerDirect") is a corporation organized and existing under the laws of the State of Florida with its principal place of business located at 7795 West Flagler Street, Suite 35, Miami, FL 33144.  TigerDirect can be served via its agent for service of process:  Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.

33.     Upon information and belief, Defendant Tivo Inc. ("Tivo") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 2160 Gold Street, Alviso, California 95002.  Tivo can be served via its registered agent for service of process:  Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company; 211 East 7th Street, Suite 620; Austin TX 78701-3218.

34.     Upon information and belief, Defendant TTE Technology, Inc. ("TTE") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 101 W 103rd Street, INH-620 Indianapolis, Indiana 46290.  TTE can be served via its registered agent for service of process:  CT Corporation System, 350 N. St. Paul St., Suite 2900; Dallas, Texas 75201-4234.

35.     Upon information and belief, Defendant Verizon Communications Inc. ("Verizon") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 140 West Street, New York, New York 10007.  Verizon can be served via its agent for service of process:  Office of the Secretary of State; Statutory Documents Section—Citations Unit; 1019 Brazos Street; Austin, TX 78701.

36.     Upon information and belief, Defendant Videoland, LLC ("Videoland") is a Texas limited liability company with its principal place of business located at 6808 Hornwood Dr., Houston, TX 77074.  Videoland can be served via its registered agent for service of process: Prashant K. Mody, 6808 Hornwood Dr., Houston, TX 77074.  Videoland operates several stores throughout Texas under the MODIA brand.

37.     Upon information and belief, Defendant ViewSonic Corporation ("ViewSonic") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 381 Brea Canyon Road, Walnut, California 91789.  ViewSonic can be served via its registered agent for service of process: CT Corporation System, 350 N. St. Paul St., Suite 2900; Dallas, Texas 75201-4234.

## JURISDICTION AND VENUE

38.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284-285, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. §1331 and §1338(a).

39.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(b).
Upon information and belief, each Defendant has transacted business in this district, and
has committed and/or induced acts of patent infringement in this district.

40.     Upon information and belief, each Defendant is subject to this Court's
specific and general personal jurisdiction pursuant to due process and/or the Texas Long
Arm Statute, due at least to each Defendant's substantial business in this forum, including:
(i) at least a portion of the infringements alleged herein; and (ii) regularly doing or
soliciting business, engaging in other persistent courses of conduct, and/or deriving
substantial revenue from goods and services provided to individuals in Texas and in this
district.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 4,930,158

41.     On May 29, 1990, United States Patent No. 4,930,158 ("the '158 patent")
was duly and legally issued by the United States Patent and Trademark Office for an
invention entitled "Selective Video Playing System."  A true and correct copy of the '158
patent is attached hereto as Exhibit A.

42.     On November 4, 2008, the United States Patent and Trademark Office
issued a Reexamination Certificate for the '158 patent, which confirmed the patentability
of Claims 8-11 and 19-22 of the '158 patent.  A true and correct copy of this
Reexamination Certificate is attached hereto as Exhibit B.

43.     Guardian is the owner of the '158 patent with all substantive rights in and to
that patent, including the sole and exclusive right to prosecute this action and enforce the
'158 patent against infringers, and to collect damages for all relevant times.  The '158
patent is expired.

44.     As it pertains to this lawsuit, the '158 patent generally relates to parental
control features contained in DVD players, digital video recorders ("DVRs") and other set-

top boxes, personal computers, hand-held electronic devices, and other items that can play stored video offered for sale by Defendants that allow owners of the players to restrict the types of video viewed by others.

45.     Upon information and belief, prior to the expiration of the '158 patent, Acer directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including computers and laptops) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Acer induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.   Acer's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

46.     Upon information and belief, prior to the expiration of the '158 patent, Apex directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVD players) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Apex induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.  Apex's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

47.     Upon information and belief, prior to the expiration of the '158 patent, AT&T directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVRs and other set-top boxes) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, AT&T induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.  AT&T's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

48.     Upon information and belief, prior to the expiration of the '158 patent, Conn's directly or through intermediaries, made, had made, installed, used, imported,

provided, supplied, distributed, sold, and/or offered for sale products and/or systems
(including DVD players) that infringed or, when used, infringed one or more claims of the
'158 patent.  In addition, Conn's induced infringement and/or contributed to the
infringement of one or more of the claims of the '158 patent by its customers.  Conn's'
infringements were willful and with full knowledge of the '158 patent and/or with reckless
indifference to its existence.

49.      Upon information and belief, prior to the expiration of the '158 patent,
Fujitsu America directly or through intermediaries, made, had made, used, imported,
provided, supplied, distributed, sold, and/or offered for sale products and/or systems
(including computers and laptops) that infringed or, when used, infringed one or more
claims of the '158 patent.  In addition, Fujitsu America induced infringement and/or
contributed to the infringement of one or more of the claims of the '158 patent by its
customers.  Fujitsu America's infringements were willful and with full knowledge of the
'158 patent and/or with reckless indifference to its existence.

50.      Upon information and belief, prior to the expiration of the '158 patent,
Fujitsu directly or through intermediaries, made, had made, used, imported, provided,
supplied, distributed, sold, and/or offered for sale products and/or systems (including
computers and laptops) that infringed or, when used, infringed one or more claims of the
'158 patent.  In addition, Fujitsu induced infringement and/or contributed to the
infringement of one or more of the claims of the '158 patent by its customers.  Fujitsu's
infringements were willful and with full knowledge of the '158 patent and/or with reckless
indifference to its existence.

51.      Upon information and belief, prior to the expiration of the '158 patent,
Gamestop directly or through intermediaries, made, had made, used, imported, provided,
supplied, distributed, sold, and/or offered for sale products and/or systems (including
XBOX 360 systems) that infringed or, when used, infringed one or more claims of the '158
patent.  In addition, Gamestop induced infringement and/or contributed to the infringement

of one or more of the claims of the '158 patent by its customers.   Gamestop's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

52.     Upon information and belief, prior to the expiration of the '158 patent, Haier directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVD players) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Haier induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.   Haier's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

53.     Upon information and belief, prior to the expiration of the '158 patent, Hopper directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVD players) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Hopper induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.  Hopper's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

54.     Upon information and belief, prior to the expiration of the '158 patent, Imation directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVD players) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Imation induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.  Imation's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

55.     Upon information and belief, prior to the expiration of the '158 patent, J & R Electronics directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including laptop computers and DVD players) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, J & R Electronics induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.   J & R Electronics' infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

56.     Upon information and belief, prior to the expiration of the '158 patent, Lasonic directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVD players) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Lasonic induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.  Lasonic's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

57.     Upon information and belief, prior to the expiration of the '158 patent, Lenovo directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including computers and laptops) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Lenovo induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.  Lenovo's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

58.     Upon information and belief, prior to the expiration of the '158 patent, Memorex directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVD

14

players) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Memorex induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.  Memorex's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

59.     Upon information and belief, prior to the expiration of the '158 patent, Micro Center directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including computers, laptops, and DVD players) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Micro Center induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.   Micro Center's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

60.     Upon information and belief, prior to the expiration of the '158 patent, Microsoft directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including XBOX 360 systems) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Microsoft induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.   Microsoft's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

61.     Upon information and belief, prior to the expiration of the '158 patent, Motorola directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVRs and other set-top boxes) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Motorola induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its

customers. Motorola's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

62.     Upon information and belief, prior to the expiration of the '158 patent, Office Depot directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including computers and laptops) that infringed or, when used, infringed one or more claims of the '158 patent. In addition, Office Depot induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers. Office Depot's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

63.     Upon information and belief, prior to the expiration of the '158 patent, Protron directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVRs and DVD players) that infringed or, when used, infringed one or more claims of the '158 patent. In addition, Protron induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers. Protron's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

64.     Upon information and belief, prior to the expiration of the '158 patent, Rent-A-Center directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including laptop computers) that infringed or, when used, infringed one or more claims of the '158 patent. In addition, Rent-A-Center induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers. Rent-A-Center's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

65.     Upon information and belief, prior to the expiration of the '158 patent, Skyworth directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVD players) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Skyworth induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.  Skyworth's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

66.     Upon information and belief, prior to the expiration of the '158 patent, Sound Around directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVD players) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Sound Around induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.  Sound Around's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

67.     Upon information and belief, prior to the expiration of the '158 patent, Staples directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including computers and laptops) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Staples induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.  Staples' infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

68.     Upon information and belief, prior to the expiration of the '158 patent, Starlite directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems

17

(including DVD players) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Starlite induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.  Starlite's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

69.     Upon information and belief, prior to the expiration of the '158 patent, Starlite Holdings directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVD players) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Starlite Holdings induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.  Starlite Holdings' infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

70.     Upon information and belief, prior to the expiration of the '158 patent, TigerDirect directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including laptop computers and DVD players) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, TigerDirect induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.   TigerDirect's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

71.     Upon information and belief, prior to the expiration of the '158 patent, Tivo directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVRs) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Tivo induced infringement and/or contributed to the infringement of one or more

of the claims of the '158 patent by its customers.   Tivo's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

72.     Upon information and belief, prior to the expiration of the '158 patent, Verizon directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVRs and other set-top boxes) that infringed or, when used, infringed one or more claims of the '158 patent.  In addition, Verizon induced infringement and/or contributed to the infringement of one or more of the claims of the '158 patent by its customers.  Verizon's infringements were willful and with full knowledge of the '158 patent and/or with reckless indifference to its existence.

73.     Guardian has been damaged as a result of the infringing conduct by Defendants alleged above and, thus, such Defendants are liable to Guardian in an amount that adequately compensates it for their infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.


## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 4,930,160

74.     On May 29, 1990, United States Patent No. 4,930,160 ("the '160 patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Automatic Censorship of Video Programs."  A true and correct copy of the '160 patent is attached hereto as Exhibit C.

75.     On April 7, 2009, the United States Patent and Trademark Office issued a Reexamination Certificate for the '160 patent, which confirmed the patentability of Claims 3, 6, 7, 16, 19, and 20 of the '160 Patent.  A true and correct copy of this Reexamination Certificate is attached hereto as Exhibit D.

76.     Guardian is the owner of the '160 patent with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '160 patent against infringers, and to collect damages for all relevant times. The '160 patent is expired.

77.     As it pertains to this lawsuit, the '160 patent generally relates to parental control features contained in televisions, DVRs and other set-top boxes, personal computers, hand-held electronic devices, and other items offered for sale by Defendants that allow owners of such devices to restrict viewing of certain movies and other video content based on the particular program's rating. *See* 47 C.F.R. 15.120.

78.     Upon information and belief, prior to the expiration of the '160 patent, Acer directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including computers and laptops) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Acer induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by others. Acer's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

79.     Upon information and belief, prior to the expiration of the '160 patent, Apex directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including televisions) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Apex induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers. Apex's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

80.     Upon information and belief, prior to the expiration of the '160 patent, AT&T directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems

(including DVRs and other set-top boxes) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, AT&T induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers. AT&T's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

81.    Upon information and belief, prior to the expiration of the '160 patent, Conn's directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including televisions) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Conn's induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers. Conn's' infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

82.    Upon information and belief, prior to the expiration of the '160 patent, Fujitsu America directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including computers and laptops) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Fujitsu America induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers. Fujitsu America's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

83.    Upon information and belief, prior to the expiration of the '160 patent, Fujitsu directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including computers and laptops) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Fujitsu induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers. Fujitsu's

infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

84.     Upon information and belief, prior to the expiration of the '160 patent, Haier directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including televisions) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Haier induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers.  Haier's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

85.     Upon information and belief, prior to the expiration of the '160 patent, Hisense directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including televisions) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Hisense induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers.  Hisense's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

86.     Upon information and belief, prior to the expiration of the '160 patent, Hopper directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including televisions) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Hopper induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers.  Hopper's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

87.     Upon information and belief, prior to the expiration of the '160 patent,
Imation directly or through intermediaries, made, had made, used, imported, provided,
supplied, distributed, sold, and/or offered for sale products and/or systems (including
televisions) that infringed or, when used, infringed one or more claims of the '160 patent.
In addition, Imation induced infringement and/or contributed to the infringement of one or
more of the claims of the '160 patent by its customers.  Imation's infringements were
willful and with full knowledge of the '160 patent and/or with reckless indifference to its
existence.

88.     Upon information and belief, prior to the expiration of the '160 patent, J &
R Electronics directly or through intermediaries, made, had made, installed, used,
imported, provided, supplied, distributed, sold, and/or offered for sale products and/or
systems (including laptop computers and televisions) that infringed or, when used,
infringed one or more claims of the '160 patent.  In addition, J & R Electronics induced
infringement and/or contributed to the infringement of one or more of the claims of the
'160 patent by its customers.   J & R Electronics' infringements were willful and with full
knowledge of the '160 patent and/or with reckless indifference to its existence.

89.     Upon information and belief, prior to the expiration of the '160 patent,
Lasonic directly or through intermediaries, made, had made, used, imported, provided,
supplied, distributed, sold, and/or offered for sale products and/or systems (including
televisions) that infringed or, when used, infringed one or more claims of the '160 patent.
In addition, Lasonic induced infringement and/or contributed to the infringement of one or
more of the claims of the '160 patent by its customers.  Lasonic's infringements were
willful and with full knowledge of the '160 patent and/or with reckless indifference to its
existence.

90.     Upon information and belief, prior to the expiration of the '160 patent,
Lenovo directly or through intermediaries, made, had made, used, imported, provided,
supplied, distributed, sold, and/or offered for sale products and/or systems (including

computers and laptops) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Lenovo induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers. Lenovo's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

91.     Upon information and belief, prior to the expiration of the '160 patent, Memorex directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including televisions) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Memorex induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers. Memorex's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

92.     Upon information and belief, prior to the expiration of the '160 patent, Micro Center directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including computers, laptops, and televisions) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Micro Center induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers. Micro Center's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

93.     Upon information and belief, prior to the expiration of the '160 patent, Motorola directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVRs and other set-top boxes) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Motorola induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its

customers.   Motorola's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

94.      Upon information and belief, prior to the expiration of the '160 patent, Office Depot directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including computers and laptops) that infringed or, when used, infringed one or more claims of the '160 patent.  In addition, Office Depot induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by others. Office Depot's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

95.      Upon information and belief, prior to the expiration of the '160 patent, On Corp directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including televisions) that infringed or, when used, infringed one or more claims of the '160 patent.  In addition, On Corp induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers.  On Corp's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

96.      Upon information and belief, prior to the expiration of the '160 patent, Proton directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including televisions) that infringed or, when used, infringed one or more claims of the '160 patent.  In addition, Proton induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers.  Proton's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

97.     Upon information and belief, prior to the expiration of the '160 patent, Protron directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including televisions) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Protron induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers. Protron's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

98.     Upon information and belief, prior to the expiration of the '160 patent, Rent-A-Center directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including laptop computers) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Rent-A-Center induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers. Rent-A-Center's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

99.     Upon information and belief, prior to the expiration of the '160 patent, Robert Bosch directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including car DVD players) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Robert Bosch induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers. Robert Bosch's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

100.    Upon information and belief, prior to the expiration of the '160 patent, Skyworth directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems

(including televisions) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Skyworth induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers. Skyworth's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

101.    Upon information and belief, prior to the expiration of the '160 patent, Sound Around directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including televisions) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Sound Around induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers. Sound Around's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

102.    Upon information and belief, prior to the expiration of the '160 patent, Staples directly or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including computers and laptops) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Staples induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by others.   Staples' infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

103.    Upon information and belief, prior to the expiration of the '160 patent, Starlite directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including televisions) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, Starlite induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers. Starlite's

infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

104.    Upon information and belief, prior to the expiration of the '160 patent, Starlite Holdings directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including televisions) that infringed or, when used, infringed one or more claims of the '160 patent.  In addition, Starlite Holdings induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers. Starlite Holdings' infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

105.    Upon information and belief, prior to the expiration of the '160 patent, Tatung directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including televisions) that infringed or, when used, infringed one or more claims of the '160 patent.  In addition, Tatung induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers.   Tatung's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

106.    Upon information and belief, prior to the expiration of the '160 patent, TigerDirect directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including laptop computers and televisions) that infringed or, when used, infringed one or more claims of the '160 patent.  In addition, TigerDirect induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers.  TigerDirect's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

107.    Upon information and belief, prior to the expiration of the '160 patent, Tivo directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVRs) that infringed or, when used, infringed one or more claims of the '160 patent.  In addition, Tivo induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers.  Tivo's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

108.    Upon information and belief, prior to the expiration of the '160 patent, TTE directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including televisions) that infringed or, when used, infringed one or more claims of the '160 patent. In addition, TTE induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers.  TTE's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

109.    Upon information and belief, prior to the expiration of the '160 patent, Verizon directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including DVRs and other set-top boxes) that infringed or, when used, infringed one or more claims of the '160 patent.  In addition, Verizon induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers.  Verizon's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

110.    Upon information and belief, prior to the expiration of the '160 patent, Videoland directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including televisions) that infringed or, when used, infringed one or more claims of the

'160 patent.  In addition, Videoland induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers.  Videoland's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

111.    Upon information and belief, prior to the expiration of the '160 patent, Viewsonic directly or through intermediaries, made, had made, installed, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems (including televisions) that infringed or, when used, infringed one or more claims of the '160 patent.  In addition, Viewsonic induced infringement and/or contributed to the infringement of one or more of the claims of the '160 patent by its customers.  Viewsonic's infringements were willful and with full knowledge of the '160 patent and/or with reckless indifference to its existence.

112.    Guardian has been damaged as a result of the infringing conduct by Defendants alleged above and, thus, such Defendants are liable to Guardian in an amount that adequately compensates it for their infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

Guardian hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure of any issues so triable by right.

## PRAYER FOR RELIEF

Guardian requests that the Court find in its favor and against Defendants, and that the Court grant Guardian the following relief:

a.    Judgment that one or more claims of United States Patent No. 4,930,158 and/or 4,930,160 have been infringed, either literally and/or under the doctrine of

equivalents, by one or more Defendants and/or by others to whose infringement Defendants have contributed and/or by others whose infringement has been induced by Defendants;

b.      Judgment that Defendants account for and pay to Guardian all damages to and costs incurred by Guardian because of Defendants' infringing activities and other conduct complained of herein;

c.      That Defendants' infringements be found to be willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d.      That Guardian be granted pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

e.      That this Court declare this an exceptional case and award Guardian its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

f.      That Guardian be granted such other and further relief as the Court may deem just and proper under the circumstances.


Dated: November 10, 2010                    Respectfully submitted,

                                             /s/  S. Calvin Capshaw
                                            S. Calvin Capshaw
                                            State Bar No. 03873900
                                            Elizabeth L. DeRieux
                                            State Bar No. 05770585
                                            D. Jeffrey Rambin
                                            State Bar No. 00791478
                                            CAPSHAW DeRIEUX, LLP
                                            1127 Judson Road, Suite 220
                                            P.O. Box 3999
                                            Longview, TX  75601-5157
                                            Telephone: (903) 236-9800
                                            Facsimile: (903) 236-8787
                                            E-mail: ccapshaw@capshawlaw.com

E-mail:  ederieux@capshawlaw.com
E-mail:  jrambin@capshawlaw.com

Matthew J. Antonelli (lead attorney)
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
ANTONELLI, HARRINGTON &
THOMPSON LLP
4200 Montrose Blvd., Ste. 430
Houston, TX 77006
(713) 581-3000

ATTORNEYS FOR PLAINTIFF
GUARDIAN MEDIA TECHNOLOGIES,
LTD.