UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| GUARDIAN MEDIA TECHNOLOGIES, LTD. | ) | |
| | ) | Case No. 6:10-CV-597-LED |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ACER AMERICA CORPORATION, ET AL., | ) | <u>JURY TRIAL DEMANDED</u> |
| | ) | |
| Defendants. | | |

**GUARDIAN'S OPPOSITION TO THE MOTION TO TRANSFER VENUE
TO THE SOUTHERN DISTRICT OF CALIFORNIA**

# **TABLE OF CONTENTS**

**page**

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ....................................................................................................3

III. LOCATION OF THE PARTIES ............................................................................4

    A. The Plaintiff And Most Of The Defendants Are Located In This District, In Texas, Or In Locations Closer To This District Than To California ..............4

    B. TTE And On Corp US Are Not "California Defendants" ....................................5

IV. THE BALANCE OF PUBLIC AND PRIVATE INTEREST FACTORS DOES NOT SUPPORT TRANSFER .....................................................................7

    A. The Public Interest Factors Do Not Support Transfer To Southern California ...............................................................................................7

    B. The Private Interest Factors Do Not Support Transfer To Southern California .............................................................................................10

V. BECAUSE NO RELATED CASE IS PENDING IN SOUTHERN CALIFORNIA, AND THE CLOSED CASE WILL BE OF LIMITED UTILITY IN THIS CASE, JUDICIAL ECONOMY HAS MARGINAL WEIGHT ......................12

VI. MOVANTS HAVE NOT SHOWN THIS CASE COULD HAVE BEEN BROUGHT IN CALIFORNIA AGAISNT ALL DEFENDANTS ................................14

VII. CONCLUSION....................................................................................................15

## I.   INTRODUCTION

Of the remaining twenty-one defendants, only seven joined in the motion to transfer this case to the Southern District of California.  And they have not met their significant burden to show that Southern California is a clearly more convenient venue than this district.  Virtually every fact relevant to the transfer analysis fails to support their motion:

<u>Location of Plaintiff</u>.  Contrary to movants' claims, Guardian's presence in this district must be considered in the transfer analysis.  Guardian has been a Texas limited partnership since it was formed in 2003.   It has been based in this district since its Director, Thomas Coverstone, moved to Hallsville over a year ago.  Indeed, this Court has held that the presence in this district of another company run by Mr. Coverstone should be given weight.

<u>Location of Defendants</u>.  Even crediting defendants' asserted locations, this district is a more convenient venue for the vast majority of the remaining defendants.[1]  Of the twenty-one remaining defendants:

- Two are located in this district (where Guardian is as well);

- Three are located elsewhere within Texas;

- Twelve of the thirteen defendants located outside of Texas and California are in places closer to this district than to the Southern District of California;

- Two claim to be located in California outside of the Southern District; and

- Only one claims to be located in the Southern District of California.  (But see below for more on this defendant, On Corp US, Inc.)

---

[1] In the past months, Guardian has settled with and/or dismissed several defendants: Acer America Corporation (Dkt. 283), the Fujitsu Defendants (Dkt. 332), Hisense USA Corporation (Dkt. 304), Lasonic Electronics Corporation (Dkt. 306), Proton International America (Dkt. 326), Protron Digital Corporation (Dkt. 300), Robert Bosch LLC (Dkt. 315), Skyworth Electronics, Inc. (Dkt. 292), the Starlite Defendants (Dkt. 325), Tatung Company of America (Dkt. 305), TigerDirect Inc. (Dkt. 312), and TiVo Inc. (Dkt. 331).  Defendant Apex Digital, Inc. was severed due to bankruptcy (Dkt. 85).

TTE and On Corp. It is highly questionable that two of the remaining "California defendants" are actually based there. TTE Technology, Inc. says it is based in an office park in the Central District of California that it moved into only four months ago (after this suit was filed). But TTE's own website tells a different story: it provides a telephone number with an El Paso, Texas area code, and a contact address in Juarez near the Texas-Mexico border. There, TTE runs its North American operations out of a massive facility that makes nearly three million LCD televisions a year. As to On Corp US, Inc., its key witness—the individual who ran the company as a "solo operation" out of Indianapolis during the life of the patents-in-suit—still works for On Corp US in Indiana, along with its sales department. And On Corp US's products are designed and made abroad. At least for purposes of this case, it is not based in California.

Given these facts, none of the convenience factors support transfer, and many weigh against it:

Local Interest. With three parties located in this district and only one, On Corp US, even arguably in the Southern District of California, local interest weighs against transfer.

Ease of Access to Sources of Proof. Movants have generally stated that their documents are at their headquarters, and that can be presumed for other defendants. So it will be more convenient for almost all of the parties to transport documents to this district.

Cost of Attendance for Willing Witnesses. Similarly, movants have generally said their witnesses are at their headquarters, or are in Asia (and thus are so far from each venue that they do not impact the transfer analysis). The other defendants' witnesses are presumed to be at their headquarters. Thus, this district is more convenient for almost all of the parties and witnesses.

Time to Trial. The transferee district is among the most badly congested in the country, with a median time to trial 13 months longer than in this district—and getting worse.

<u>Other Convenience Factors</u>.  The other factors are neutral at best.

Movants rest much of their arguments upon the closed litigation in Southern California. But they overstate both the scope of the court's ruling in that case, and the judicial economy to be gained by transfer.  The Federal Circuit has recently made clear that a district court's familiarity with the patents and technology does not control the transfer analysis when, as in this case, no related case is pending there and the convenience factors cut the other way.  Moreover, the Southern California court's substantive treatment of the patents-in-suit was limited.  That court only independently ruled on one of the two patents-in-suit—and as to defendants not party to this litigation—and vacated its rulings following the parties' settlement.  The court never conducted a *Markman* hearing and did little else of substance that might inform this case.

Finally, movants have not made the threshold showing that the case could have been originally brought in California.  They improperly rely on sales by some defendants that were generated by movants' own counsel after this case began.  These sales cannot show that California had jurisdiction over those parties at the "critical time": when the case was filed.

## II.   BACKGROUND

Guardian owns U.S. Patent Nos. 4,930,158 and 4,930,160, which expired Aug. 29, 2008. The patents teach and claim inventions for controlling the viewing of objectionable content in television broadcasts, movies, and other video media.  Guardian has successfully licensed these patents to many of the biggest names in consumer electronics.

In 2005, Sony and others brought declaratory judgment actions against Guardian in the Southern District of California.  Each action sought declarations that the '158 and '160 patents were invalid and not infringed.  Guardian counterclaimed, charging infringement of both patents. These actions were stayed pending reexamination.  Ex. 3, [SDCA Docket].  In January 2009,

after the Patent Office confirmed the validity of several claims of each patent, the stays were lifted. Ex. 4, [Order lifting stay]. In August 2009, the Southern California court granted summary judgment of non-infringement of the '158 patent only. Subsequently, the parties in the Southern California actions filed a stipulation and joint motion to adopt another court's ruling on the '160 patent[2] and enter final judgment, which ultimately ended that case and allowed Guardian to promptly appeal. As a result of the Federal Circuit's mandatory mediation process, the parties settled their disputes on both patents. On remand, the district court granted the parties' joint motions to vacate its prior claim constructions and judgments. Ex. 5, [Stipulation, Final Judgment]; Ex. 6, [SDCA Vacating Order].

### III. LOCATION OF THE PARTIES

#### A. The Plaintiff And Most Of The Defendants Are Located In This District, In Texas, Or In Locations Closer To This District Than To California

The following table lists the parties' headquarters, and the straight-line distance from each court—the parties are collectively over twice as far from Southern California:[3]

**Parties that are closer to Tyler, TX (EDTX)**

| Party | Headquarters | Distance to Tyler Courthouse (miles) | Distance to San Diego Courthouse (miles) |
|---|---|---|---|
| Guardian (Plaintiff) | Longview, TX (EDTX) | 34 | 1,303 |
| Conn's | Beaumont, TX (EDTX) | 172 | 1,368 |
| Rent-A-Center | Plano, TX (EDTX) | 102 | 1,179 |
| AT&T Operations | Dallas, TX (NDTX) | 92 | 1,182 |
| GameStop | Grapevine, TX (NDTX) | 111 | 1,164 |
| Videoland | Houston, TX (SDTX) | 183 | 1,294 |
| Haier America | New York, NY | 1,313 | 2,429 |
| Hopper | Boca Raton, FL | 1,002 | 2,257 |

---

[2] After Guardian had been transferred to the Central District of California in another case, Guardian sued Toshiba there under the '160 patent. Toshiba moved for summary judgment of non-infringement, which was granted. The claim construction and judgment in that case has also been vacated in light of settlement. Ex. 23, [CDCA Vacating Order].

[3] Thompson Decl. ¶ 27. On Corp US and TTE (marked with "*" in the table) claim to be based in California. But as shown below, that does not appear to be the case.

4

| | | | |
|---|---|---:|---:|
| Imation, Memorex | Oakdale, MN | 883 | 1,545 |
| J&R Electronics | New York, NY | 1,311 | 2,428 |
| Lenovo (United States) | Morrisville, NY | 971 | 2,185 |
| Micro Center | Hilliard, OH | 860 | 1,946 |
| Motorola | Schaumburg, IL | 780 | 1,714 |
| Office Depot | Boca Raton, FL | 1,001 | 2,257 |
| On Corp US* | Indianapolis, IN | 730 | 1,787 |
| Sound Around | Brooklyn, NY | 1,310 | 2,429 |
| Staples | Framingham, MA | 1,455 | 2,543 |
| Verizon Online | Ashburn, VA | 1,099 | 2,246 |
| **Parties that are not significantly closer to either court** | | | |
| TTE* | Juarez, Mexico | 654 | 629 |
| **Parties that are closer to San Diego, CA (SDCA)** | | | |
| Microsoft | Redmond, WA | 1,755 | 1,066 |
| ViewSonic | Walnut, CA (CDCA) | 1,306 | 98 |
| **Cumulative distance from each court** | | **17,124** | **35,049** |

**B.     TTE And On Corp US Are Not "California Defendants"**

    **1.     According to TTE's own website, its North American operations are based in Juarez, just across the border from El Paso, Texas**

According to the declaration filed by its controller, Tom Gong, TTE moved its headquarters from Indianapolis to Corona, California (in the Central District of California) in December 2010, where it now maintains its "sole office." Gong Decl. ¶¶ 2-7.

TTE's website, however, paints a different picture. The "Contact Us" tab of TTE's website provides a Juarez, Mexico address and, for U.S. callers, an El Paso, Texas area phone number, for "TTE Technology Inc." Ex. 7, [TTE Website, "Contact Us"]. The homepage, entitled "Welcome to TTE Technology Inc.," explains that TTE's Juarez facility has "vast experience on LCD TV manufacturing with an annual capacity of 2.8M units per year," and offers television and other contract manufacturing services. Ex. 8, [TTE Website Homepage]. In fact, TTE says it has had a "[l]ocal presence in the Juarez region [that] dates back to 1969

5

when RCA building was inaugurated." [4]  Finally, the website lists several TTE facilities worldwide.  Ex. 9, [TTE Website, "Location"]. Mexico is shown as serving North America; nothing is listed in California.

TTE is one of the largest television manufacturers in the world.[5]  Even comparing just the photos of the Juarez and Corona facilities, TTE's claim to be headquartered in Corona is neither credible nor controlling. Ex. 1, [TTE Facility Photos].  At the very least, the Juarez facility is an important source of relevant witnesses and documents.

> **2.  On Corp US's key witness and its sales department are in Indiana, and its products are designed and built abroad**

In the declaration filed by Jonathan Zupnik, On Corp US claims that it is based in San Diego.  In addition, "On Corp's employees who may have knowledge relevant to Plaintiff's allegations are located in San Diego" and, apparently, it "does not keep or store documents or records anywhere else in the United States."  Zupnik Decl. ¶¶ 4, 8.

One person who is not mentioned in that declaration is Patrick Deighan.  Deighan was the focus of a February 2008 article in the Indianapolis Business Journal that described his efforts in running On Corp US as "a solo operation." Ex. 2, [Feb. 25, 2008 IBJ Article] at 1.  In 2005, Thomson's Proscan television brand was licensed by ON Corporation, a Korean electronics firm looking to enter the North American market. *Id.*  ON Corporation set up a U.S. subsidiary (On Corp US) and put Deighan, a former Thomson executive with Proscan experience, "in charge." *Id.*  Deighan ran On Corp US "domestic operations primarily out of his home." *Id.* While ON

---

[4] TTE took over its Mexico facilities and the RCA television business from Thomson in 2004. *See* Ex. 11, [11-3-03 TTE Press Release].

[5] TTE "is a subsidiary company of TCL Multimedia Technology Holdings LTD," a Chinese conglomerate.  According to TTE's website, the TCL group as a whole "is one of the world's leading consumer electronics manufacturers[,] ranked 6th in the world in TV sales, selling in excess of 14.5 million sets last year." Ex. 10, [TTE Website, "About Us"].

6

Corporation designed and made the televisions overseas, in the U.S. Deighan "outsourced everything but the sales functions, which he handle[d] himself." *Id.*

Deighan still lives in Indianapolis. Ex. 14, [Deighan property records]. His current title at On Corp US is Senior Executive Vice President, Sales & Marketing. Ex. 15, [Deighan LinkedIn page] (also listing a title of "Owner"). What's more, the after-hours message for On Corp US's Indianapolis number suggests not only that Deighan and On Corp's sales department are still there, but also that San Diego merely handles parts, service, and warranty issues:

> You've reached the office of Proscan LCD TV. If you have a question regarding warranty or parts, or if you need to find a service center to repair your TV, please call our San Diego office at 858-546-4445. If you have a message for Patrick Deighan, or for the sales department, please leave a message and we'll call you back right away. Thank you.

Thompson Decl ¶ 28; Ex. 16, [On Corp US BW profile] (giving 317-581-6365 contact number).

It is unclear why Deighan was not mentioned in the Zupnik declaration.[6] But given his role in running On Corp US at least as late as February 2008, months before the patents-in-suit expired, he is likely the key witness regarding On Corp US's patent infringement.

## IV.  THE BALANCE OF PUBLIC AND PRIVATE INTEREST FACTORS DOES NOT SUPPORT TRANSFER

Movants have not met their "significant burden" of showing that litigating this case in Southern California would be "clearly more convenient" than this district. *In re Volkswagen of Am., Inc. (Volkswagen II)*, 545 F.3d 304, 314 & n.10, 315 (5th Cir. 2008).

### A.  The Public Interest Factors Do Not Support Transfer To Southern California

#### 1.  Local interest weighs against transfer

---

[6] Counsel for Guardian emailed On Corp US's counsel to confirm the facts in the IBJ article. Ex. 17, [3/28/11 e-mail from L. Thompson]. As of this brief, On Corp has not answered Guardian's questions.

7

This factor analyzes a case's connection with both venues. Guardian is a *bona fide* resident of this district; its presence should be considered for local interest and other factors in the transfer analysis. Movants contend that Guardian's presence is "ephemeral" and must be disregarded. But Guardian has been based in this district ever since its Director, Thomas Coverstone, moved to Hallsville over a year ago. Coverstone runs Guardian from its physical office in Longview, and virtually all of its relevant documents are there. Nor is Guardian's formation "recent"; it has been a Texas limited partnership since it was formed in 2003. Coverstone Decl. ¶¶ 3-13.

In fact, in *Texas Data Co., L.L.C. v. Target Brands, Inc.*, this Court held that the presence in this district of another company run by Coverstone should be given weight. 2011 U.S. Dist. LEXIS 2917, *41-45 (E.D. Tex. Jan. 12, 2011). In denying transfer, the Court distinguished cases "where a plaintiff from out of the state or country, as in *Zimmer* and *Microsoft*, created a company or office in the Eastern District of Texas to manipulate venue," and had no employees or principals in the district. *Id.* Instead, because Coverstone, "Texas Data's president and employee[,] has lived in the Eastern District of Texas for over a year. . . . it is natural and logical for the limited liability company to be formed under Texas laws and the office to be located in the Eastern District of Texas." *Id.* at *44. That analysis applies similarly to Guardian.[7]

It is true that Guardian recently changed the address for its registered office to Marshall, naming as its registered agent the firm that was already serving as Guardian's bookkeeper and

---

[7] *See also NovelPoint Learning LLC v. LeapFrog Enters.*, 2010 U.S. Dist. LEXIS 128906, *10-14 (E.D. Tex. Dec. 6, 2010) (plaintiff's presence was not "recent or "ephemeral" where two of three principals lived in Texas and company was formed four months before it filed suit); *Personal Audio, LLC v. Apple, Inc.*, 2010 WL 582540 (E.D. Tex., Feb. 11, 2010) (plaintiff's presence in district given weight where its sole office, and its relevant documents, were in the district); *Eolas Techs., Inc. v. Adobe Sys., Inc.*, 2010 U.S. Dist. LEXIS 104125, *20-23 (E.D. Tex. Sep. 28, 2010) (plaintiff's presence in district was "recent," but "not ephemeral," where its officer, its only corporate office, and its documents were located in the district).

8

accountant. But that is simply Guardian's address for service of process, not its principal place of business—it has no relevance to transfer. Likewise, though Coverstone has a California house that he has not yet sold, he lives, works, and votes in this district. Coverstone Decl. ¶¶ 3-5.

Turning to local interest in the defendants, two are based in this district (Rent-A-Center and Conn's), whereas only one claims to be in Southern California (On Corp US). And as shown above, On Corp's relevant activities were actually run out of Indiana. Since there are more parties in this district than in Southern California, this factor weighs against transfer.

### 2. Administrative difficulties caused by court congestion weighs against transfer

This Court has treated time-to-trial differences between venues as meaningful and weighing against transfer in several cases.[8] But movants fail to even mention this factor. One reason why may be that the median time to trial in Southern California (37.2 months) is far longer than in this district (25.8 months). And the situation is getting worse—Southern California's median time to trial last year was 10.5 months longer than it was only a year earlier.[9] Therefore, this factor weighs against transfer.

### 3. Familiarity of the forum with the governing law is neutral

Movants argue that familiarity with controlling law in a patent-infringement case somehow favors transfer. They claim that the *res judicata* effect of the vacated summary

---

[8] *See, e.g., Ctr. One v. Vonage Holdings Corp.*, 2009 U.S. Dist. LEXIS 69683, at *24 (E.D. Tex. Aug. 10, 2009) (denying motion to transfer in part because "[t]ransfer to New Jersey would effectively add more than a year and a half to the resolution of this case."); *Acceleron, LLC v. Engenera, Inc.*, 634 F. Supp. 2d 758, 767 (E.D. Tex. 2009) (denying motion to transfer in part because "[j]udicial economy is far better served by this case remaining in the Eastern District of Texas where its disposition will most probably come nearly a year and a half faster than in the District of Delaware.").

[9] *Compare* Ex. 18, [Mar. 2010 Caseload Stats] *with* Ex. 19, [Mar. 2010 Caseload Stats].

9

judgment order in Southern California is governed by Ninth Circuit law, with which that district is more familiar than this one. Their argument makes two fundamental errors.

First, movants ignore the principle that all district courts are equally capable of applying federal law. *See In re TS Tech.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). The *res judicata* effect of the vacated judgments is a federal issue that neither court has greater capability to decide.

Second, movants incorrectly claim that the Ninth Circuit's law on *res judicata* is "controlling." The Federal Circuit has squarely held that in patent cases, issues of *res judicata*—like other issues of federal non-patent law—are governed by "the law of the regional circuit where the district court sits." *Pactiv Corp. v. Dow Chem. Co.,* 449 F.3d 1227, 1230 (Fed. Cir. 2006). It is immaterial that the relevant order was issued by a court in a different circuit. For example, the Federal Circuit has held that, in an appeal from a California district court's decision, Ninth Circuit law determined whether a ruling of a Virginia district court (located, of course, in the Fourth Circuit) had collateral estoppel effect. *See Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1359-60 (Fed. Cir. 2006). Notably, movants have not cited *any* case in which a district court in one circuit had to decide *res judicata*—or any other non-patent issue—by applying a different circuit's law.

In sum, so long as this case remains here, Fifth Circuit law controls *res judicata*. This factor cannot help movants show that transfer is warranted.

### 4. Problems with conflicts of law is neutral

There are no issues with conflicts of law or the application of foreign law in this case.

## B. The Private Interest Factors Do Not Support Transfer To Southern California

### 1. Relative ease of access to sources of proof weighs against transfer

Guardian's documents are in this district and readily accessible here. Coverstone Decl. ¶¶ 7-11. Because, as discussed above, Guardian is not an "ephemeral entity," the location of its documents must be given weight.[11] Documents for the non-moving defendants are presumed to be at their respective headquarters, and the moving defendants have generally not identified sources of relevant documents other than their asserted headquarters.[12] (Relevant documents are almost certainly in Juarez, for TTE, and in Indianapolis, for On Corp). So even if defendants often have more of the relevant documents in patent cases, the vast majority of defendants here can more easily bring their documents to this district than to Southern California.[13] Nor can movants ignore, for example, the presence in this district of companies like Rent-a-Center and Conn's—and GameStop's presence a little over 100 miles from the Tyler courthouse—simply because they are retailers. As was true in *Eolas*, these are "large companies. . . . The Court will not ignore or sever them merely because their existence in this case weighs against Defendants' motion for transfer."[14] This factor weighs against transfer.

    **2.    Cost of attendance for willing witnesses weighs against transfer**

---

[11] *NovelPoint Learning LLC*, 2010 U.S. Dist. LEXIS 128906, *10-14.

[12] *See Ams. For Fair Patent Use, LLC v. Sprint Nextel Corp.*, No. 2:10-cv-237, 2011 U.S. Dist. LEXIS 2947, * 14 (E.D. Tex. Jan. 12, 2011) (assuming that sources of proof and relevant witnesses are "primarily located at or near each party's headquarters or principal place of business" in denying motion to transfer).

[13] *See Acceleron, LLC v. Egenera, Inc.*, 634 F. Supp. 2d 758, 765 (E.D. Tex. 2009) (this factor did not support transfer to Delaware when, even though "Defendants have overwhelmingly shown that this case will revolve around documents within their possession. . . . the majority of Defendants' principal places of business, as well as most of their collective employees" were located closer to Texas). *Ctr. One v. Vonage Holdings Corp.*, 2009 U.S. Dist. LEXIS 69683, *19-20 (E.D. Tex. Aug. 10, 2009) (even though some defendants were closer to New Jersey, "[t]his is truly a national dispute, and the fact that documents in the possession of a minority of Defendants are located in and around New Jersey does not make that venue more clearly convenient than Texas.").

[14] *Eolas Techs.*, 2010 U.S. Dist. LEXIS 104125, *32 (E.D. Tex. Sep. 28, 2010).

As with the location of the documents, movants generally have stated that their witnesses are located at their headquarters, and again this is presumed to be the case for the other defendants. Although some of movants identify relevant witnesses in Asia, the inconvenience to these persons must be discounted.[15] On the other hand, Patrick Deighan, On Corp US's key witness, is in Indianapolis—which is much closer to this district. TTE likewise will have several witnesses relevant to this case in the Juarez/El Paso area, where many of the infringing televisions are likely made. In addition, Imation and Memorex identified a witness in Florida, which is far more convenient to this district than to California. Because this district will be more convenient for most of the potential witnesses, this factor weighs against transfer.[17]

### 3. Availability of compulsory process to secure attendance of non-party witnesses is neutral

Movants have not named a single relevant nonparty witness, much less any located within the Southern District of California. Thus, this factor is neutral at best.

### 4. Other practical problems is neutral at best

The faster time to trial in this district will reduce costs and make the case easier to try.

## V. BECAUSE NO RELATED CASE IS PENDING IN SOUTHERN CALIFORNIA, AND THE CLOSED CASE WILL BE OF LIMITED UTILITY IN THIS CASE, JUDICIAL ECONOMY HAS MARGINAL WEIGHT

Although not specifically one of the convenience factors, judicial economy is considered as part of evaluating whether transfer will serve the "interests of justice." But movants dramatically overstate the weight that should be accorded judicial economy in this case.

---

[15] *See In re Genentech*, 566 F. 3d 1338, 1344 (Fed. Cir. 2009) (discounting the convenience of witnesses in Europe who would travel "a significant distance no matter where they testify); *NovelPoint Learning*, 2010 U.S. Dist. LEXIS 128906, *20 n.14 (giving "negligible consideration" to the convenience of witnesses in Asia).

[17] *See Ctr. One*, 2009 U.S. Dist. LEXIS 69683, *20-22 (denying transfer where transferee district was not clearly more convenient for all potential witnesses).

12

As an initial matter, movants gloss over the limited nature of the Southern District's rulings on the patents-in-suit.  While briefs were filed on various issues, the main substantive action taken by that court was to construe two terms of the '158 patent—without conducting a full *Markman* hearing—and on that basis grant summary judgment that the Southern District defendants' sale of DVD players did not infringe that patent.  *See* Ex. 21, ['158 SJ Order] at 19.  The Southern California court made no independent ruling on the '160 patent.[18]  Rather, per the parties' stipulation to facilitate appeal, Southern California court simply adopted another court's construction of one term of that patent and issued a stipulated final judgment.[19]

Moreover, judicial economy is at its nadir when a related case is no longer pending in the transferee district.  For example, the seminal Supreme Court case on judicial economy in transfer motions had as its core concern avoiding "a situation in which two cases involving precisely the same issues are *simultaneously pending* in different District Courts[, which] leads to the wastefulness of time, energy and money that § 1404 (a) was designed to prevent." [20]  Because there are no co-pending cases in Southern California, these concerns are not presented here.

Indeed, the Federal Circuit has recently explained that judicial economy based on prior litigation alone is not dispositive.  *In re Verizon Bus. Network  Servs.,* 2011 U.S. App. LEXIS 5913 (Fed. Cir. Mar. 23, 2011).  *Verizon Business* held that a "trial court's previous handling of a lawsuit involving the same patent," including construing 25 claim terms, could not outweigh the convenience factors that went the other way:

---

[18] The '160 patent is the only one that On Corp US, TTE, Videoland, and ViewSonic are charged with infringing, and numerous other defendants are charged with infringing both patents.

[19] *See* Ex. 5, [Stipulation, Final Judgment]; Ex. 22 ['160 SJ].

[20] *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) (emphasis added), *quoted in Volkswagen III,* 566 F.3d 1349 1565 (Fed. Cir. 2009).

> In *Vistaprint*, we denied mandamus to overturn a denial of transfer and determined that the district court properly considered both its previous experience construing claims of the patent at issue and co-pending litigation before the district court involving the same patent and underlying technology. *In this case, there is no assertion that there is an additional pending lawsuit in the Eastern District involving the patent and technology.* Absent that, we deem the Eastern District's previous claim construction in a case that settled more than five years before the filing of this lawsuit to be too tenuous a reason to support denial of transfer.[21]

Likewise, although the Southern District of California substantively ruled on one of the two patents-in-suit nearly two years ago, that cannot outweigh all the convenience factors here that do not support transfer. This is especially true in light of where the "significant burden" to justify transfer lies. If the patentee could not *avoid* transfer in *Verizon Business*, when nothing but the trial court's familiarity with the patent supported keeping the case in the district, then certainly movants here cannot *force* transfer when no factor but the Southern California court's familiarity with the patents supports transferring the case out of the district.[22]

## VI.   MOVANTS HAVE NOT SHOWN THIS CASE COULD HAVE BEEN BROUGHT IN CALIFORNIA AGAISNT ALL DEFENDANTS

Not only have movants not shown good cause for transfer on the merits, they have failed to make the threshold showing that the judicial district to which transfer is sought would have been a district in which the claim could have been filed. "Whether a case 'could have been

---

[21] *Id.* at *7-8 (emphasis added); *see also In re Morgan Stanley*, 2011 U.S. App. LEXIS 7172, *6-7 (Fed. Cir. Apr. 6, 2011) (discounting familiarity with patents when "granting transfer will not require multiple courts to simultaneously decide the same or similar issues.").

[22] Guardian's request for transfer in the Southern California case does not help movants' case. That request was based primarily on the co-pending case in Central California. Thus, for example, Guardian argued that transfer would prevent inconsistent claim constructions and validity findings, and would avoid inefficiencies from litigating similar cases in two districts at once. Ex. 24, [SDCA Transfer Request] at 11-13. Neither point applies now. Guardian also argued for transfer based on the faster time to trial in Central California. *Id.* The opposite is true here—transfer would just further burden one of the most badly congested districts in the country.

filed' in the transferor venue is not an empty inquiry and requires defendants to prove both personal jurisdiction and venue in the transferor court."[23]  Movants have not proven California had personal jurisdiction over all defendants when the case began.

Movants improperly rely on post-complaint purchases of products by their California counsel to establish California's jurisdiction over several defendants.  In attempting to prove this case could have been filed in California, they classify defendants into three groups.  "Group 3" includes defendants who, though they are not based in California and do not operate there, "have interactive websites accessible from California, *and have sold and shipped products that are potentially at issue in this case into California*."  Transfer Mot. 9 (emphasis added).  This latter point is only established by purchases of products by defendant's own counsel after the case began.  *See* Kinsel Decl. ¶¶ 27-29, 38.  But the "critical time" for testing California's jurisdiction over defendants "is the time when the lawsuit was filed."[24]  Movants' purchases occurred after the case was filed, and must be disregarded.   Other their own purchases, movants are left only with evidence that the Group 3 defendants' websites *potentially* allow sales to California residents.   But that alone cannot establish personal jurisdiction there.[25]

## VII.   CONCLUSION

The Southern California court issued a narrow ruling on one of the two patents-in-suit, respecting the products of companies that are not in this case; that history cannot outweigh all the factors opposing transfer.  Guardian respectfully requests that the motion to transfer be denied.

---

[23] *Chirife v. St. Jude Med., Inc.*, 2009 WL 1684563, at *3-4 (E.D. Tex. June 16, 2009).

[24] *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546, 549 (E.D. Tex. 2009) (citing *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984)).

[25] *See, e.g., Ductcap Prods., Inc. v. J & S Fabrication, Inc*., 2009 WL 3242022, *4 (D. Minn. Oct. 2, 2009) (no jurisdiction in Minnesota over Pennsylvania corporation whose website allowed purchase of products, without proof that website had generated sales in Minnesota.).

Dated: April 13, 2011

Respectfully submitted,

/s/  Larry D. Thompson, Jr.
Matthew J. Antonelli (lead counsel)
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
ANTONELLI, HARRINGTON &
THOMPSON LLP
4200 Montrose Blvd, Suite 430
Houston, TX 77006
(713) 581-3000

S. Calvin Capshaw
State Bar No. 03873900
Elizabeth L. DeRieux
State Bar No. 05770585
D. Jeffrey Rambin
State Bar No. 00791478
CAPSHAW DeRIEUX, LLP
114 E. Commerce St.,
Gladewater, Texas 75647
Telephone: (903) 236-9800
Facsimile: (903) 236-8787
E-mail: ccapshaw@capshawlaw.com
E-mail:  ederieux@capshawlaw.com
E-mail:  jrambin@capshawlaw.com


Attorneys for
GUARDIAN MEDIA TECHNOLOGIES, LTD.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of April, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                              /s/ Larry D. Thompson, Jr.
                                              Larry D. Thompson, Jr.