# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| **GUARDIAN MEDIA TECHNOLOGIES, LTD.,**<br><br>*Plaintiff,*<br><br>v.<br><br>**ACER AMERICA CORPORATION**, *et. al.*<br><br>*Defendants.* | Case No. 6:10-cv-00597-LED<br><br>[Jury Trial Demand] |

## JOINT[1] REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF CALIFORNIA

---

[1] As shown in the signature bloc to this Reply brief, the Motion to Transfer Venue has been joined by Office Depot; Staples; and SoundAround.

1.   **Judicial economy weighs heavily in favor of transfer.**

Guardian makes two arguments as to why judicial economy does not settle the transfer question against it. Both can be rejected.

First, Guardian characterizes Judge Gonzalez's prior experience with the patents-in-suit as "limited." To the contrary, Judge Gonzalez received and reviewed substantial briefing on claim construction, invalidity, and noninfringement for both patents-in-suit. With respect to the '158 patent, while Judge Gonzalez focused her summary judgment order on the construction of two dispositive claim terms, Guardian admits that the parties submitted briefs on "various issues." Indeed, the transcript from the August 19, 2009 summary judgment hearing shows the substantial, in-depth work Judge Gonzalez expended on the '158 patent where she reviewed the file history, related foreign patent file history, and reexamination.[2] Moreover, while the Court entered summary judgment, and therefore did not need to conduct a separate *Markman*, the Court received and reviewed the parties' briefs on more than *twenty* claim terms recited in the '158 patent.[3]

With respect to the '160 patent, the fact that Judge Gonzalez adopted Judge Real's ruling speaks nothing of whether Judge Gonzalez considered the merits of *her own* ruling. Judge Gonzalez received and reviewed briefing on claim construction, invalidity, and noninfringement of the '160 patent. Guardian offers no basis for its suggestion that Judge Gonzalez rubber-stamped Judge Real's ruling.

Second, Guardian misreads the Federal Circuit's recent decision in *In re Verizon Bus. Network Servs.*[4] in arguing that because no related case is *currently* pending in California, judicial economy has marginal weight. Instead, the Federal Circuit noted in *Verizon* that a "district court properly consider[s] _both its previous experience construing claims of the_

---

[2]    Supp. App. at 382:20-21 (file history); 333:3-8 & 19-20, 334:1-2 (foreign patent); 318:3-5 & 337:7-9 (reexamination).

[3]    Supp. App. at 304:12-17.

[4]    *In re Verizon Bus. Network Servs.*, No. 956, 2011 U.S. App. LEXIS 5913 (Fed. Cir. Mar. 23, 2011).

*patent at issue _and_ co-pending litigation* before the district court involving the same patent and underlying technology."[5] Further in *Verizon,* the Federal Circuit noted that the parties resolved the first case more than five years before the subsequent action, and in between the two cases, the PTO reexamined the patents. So, from the Federal Circuit's perspective, the district court would have had to start all over, minimizing any benefit to be gained by judicial economy. By contrast, Judge Gonzalez entered her order formally dismissing Guardian's *San Diego Case* on November 3, 2010, just seven days before Guardian filed this case.[6] Further, Guardian identifies no change in the material facts between the time Judge Gonzalez entered her summary judgment orders and today. So, unlike in *Verizon,* Guardian cannot claim that Judge Gonzalez would have to start over.

2.   **THE CONVENIENCE OF THE PARTIES AND LIKELY WITNESSES WEIGH HEAVILY IN FAVOR OF TRANSFER.**

A.   ***Guardian's presence in this district cannot be considered.***

Guardian claims that it "has been based in this district ever since its Director, Thomas Coverstone, moved to Hallsville over a year ago. Coverstone runs Guardian from its physical office in Longview, and virtually all of its relevant documents are there."[7] But the public records tell a different story.

According to the records of the Texas Secretary of State, Guardian's address is 3801 N. Capital of Texas Highway, Austin.[8] While Guardian changed the address of its registered agent for service of process to Longview, Guardian did not change its corporate records to reflect a supposed change in its principal place of business.

---

[5]      *In re Verizon Bus. Network Servs.*, 2011 U.S. App. LEXIS 5913 at *8 (emphasis added); *see also In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 n.3 (Fed. Cir. 2010); *Invitrogen Corp. v. Gen. Elec. Co.*, No. 08-112, 2009 WL 331891, at *5 (E.D. Tex. Fen. 9, 2009); *Jackson v. Intel Corp.*, No. 08-154, 2009 WL 749305 at *4 (E.D. Tex. Mar. 19, 2009).

[6]      Supp. App. at 293.

[7]      Opp. at 8.

[8]      Supp. App. at 392.

Further, Guardian's operation out of Austin is also consistent with Guardian's corporate structure. Guardian is a limited partnership with a general partner called "GMT Management Co." Coverstone controls GMT. GMT's principal place of business is also in Austin. Indeed, according to the Texas Secretary of State, GMT's principal place of business *is the same* as Guardian's: 3801 N. Capital of Texas Highway, Austin.[9] In fact, as late as December 15, 2010, when GMT filed its Franchise Tax Report, it reported the *same* principal place of business as Guardian.[10]

So, while Guardian now conveniently claims that it is based in Longview, Guardian and GMT's ownership, management, and tax documents indicate a principal place of business, and all relevant records, in Austin. This evidence shows that Guardian changed its registered agent from Austin to Longview, not because of the supposed presence of Coverstone in Longview, but rather, to make venue *look* convenient here. Similarly, Guardian's citation to *Texas Data Co., L.L.C. v. Target Brands, Inc.*,[11] misses the mark because Texas Data Co. had a registered principal place of business in this district.[12] Guardian does not. Guardian should be considered an ephemeral entity whose presence cannot, as a matter of law, be considered in the transfer analysis.[13]

**B.    *The Southern District of California is more convenient for more parties.***

Before its Opposition to this Motion was due and continuing while the moving parties prepared their Reply, Guardian made a concerted effort to de-California-ize this case by entering into low-ball settlement agreements with California-based defendants. Guardian offers these California-based defendants settlements for a fraction of defense costs so that Guardian can sweep away the California-based defendants to make venue

---

[9]     Supp. App. at 394.

[10]    Supp. App. at 393 & 395.

[11]    Opp. at 8.

[12]    The step of incorporating may itself be an attempt to manipulate venue. *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011).

[13]    *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010).

look appropriate here. Strong-arming California-based defendants into low-ball settlements to change the venue calculation is as much a venue manipulation as moving documents into this district shortly after filing the complaint.[14] As the Court stated in *Raylon, LLC v. Complus Data Innovations, Co. et al.*, "this Court has some concerns about plaintiffs who file cases with extremely weak infringement positions in order to settle for less than the cost of defense and have no intention of taking the case to trial. Such a practice is an abuse of the judicial system  and threatens the integrity of and respect for the courts."[15] This is precisely what Guardian has done here: Of the approximately seventeen settlements, *eleven* were California-based. As such, movants respectfully suggest that the Court order an *in camera* inspection of all of Guardian's recent settlement agreements so that the Court can see for itself that Guardian is attempting to game venue with cost-of-defense settlements.

But in any case, Guardian's settlement spree fails to change the convenience calculus. Half of the defendants—nine of eighteen[16]—have formally joined this Motion, indicating that the Southern District of California is more convenient for them. Of the remaining nine defendants, four—J&R Electronics, Rent-a-Center, Verizon and VideoLand, LLC—have specifically denied in their answers that this Court is the most convenient venue for this action.[17] Rent-a-Center is one of the two defendants on which Guardian relies to establish the supposed convenience of this venue.[18] Of the remaining five defendants who neither joined the Motion to Transfer nor specifically objected to venue here, *not one* has objected to transfer. So, for the defendants who have not settled, the Southern District of California remains more convenient than this Court.

---

[14]     *In re Hoffman-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009).

[15]     Case No. 6:09cv355, 2011 WL 1104175 (E.D. Tex. Mar. 23, 2011).

[16]     There are twenty total remaining defendants at this time, but two California-based defendants are on the verge of settling.

[17]     Dkt. # 118 at ¶ 39; Dkt. # 229 at ¶ 39; Dkt. # 288 at ¶ 39; Dkt. # 214 at ¶ 39.

[18]     Guardian also relies on TTE's operations in Mexico.  But Guardian has the wrong entity; TTE is not Mexico-based.  Gong Decl., ¶¶ 3-7.

Nor does the alleged fact that the Southern District of California has a slower docket weigh against transfer. As the Federal Circuit held in *In re Morgan Stanley*, the "prospective speed with which [a] case might be brought to trial [is not ] of particular significance" where the plaintiff "does not make or sell any product that practices the claimed invention."[19] Guardian is a non-practicing entity and the patents-in-suit expired long ago in 2008. So, this factor is irrelevant to the transfer analysis.

**3.   PERSONAL JURISDICTION EXISTS IN THE SOUTHERN DISTRICT OF CALIFORNIA.**

Guardian concedes that the Southern District of California has personal jurisdiction over thirty-one of the thirty-six named defendants, but disputes whether movants showed that California has personal jurisdiction over the five "Group 3" defendants: Conn's Inc.; J&R Electronics; Micro Center;[20] TigerDirect; and Videoland. The movants offered proof demonstrating the availability of Internet sales into California less than three months after Guardian filed its Complaint. This evidence was sufficient under Judge Folsom's holding in *Balthasar Online, Inc. v. Network Solutions, LLC*. In that case, Judge Folsom held that parties moving to transfer need only "present . . . *a prima facie case* for personal jurisdiction," which can be satisfied by showing that "'an entity is conducting business over the internet.'"[21] Guardian did not rebut movants' *prima facie* showing that the Group 3 defendants conducted business over the Internet. For instance, Guardian offered no evidence that the websites sprung into existence in the three months between the time Guardian filed its Complaint and the time of the offers for sale. As such, movants satisfied their burden.

---

[19]   *In re Morgan Stanley*, Misc. No. 962, 2011 U.S. App. LEXIS 7172, at *7 (Fed. Cir. Apr. 6, 2011) (nonprecedential).
[20]   Notably, Micro Center's parent corporation operates two retail stores in California, and has joined the motion to transfer. *See* Koehler Decl. at ¶ 4 (Dkt. # 268-4).
[21]   654 F.Supp.2d 546, 551 (E.D. Tex. 2009) (quoting *Stomp, Inc. v. NeatO, LLC*, 61 F.Supp.2d 1074, 1078 (C.D. Cal. 1999)) (emphasis added).

May 25, 2011

By:   /s/ *Grant Kinsel*

    Grant Kinsel, Bar No. 172407
    email: gkinsel@perkinscoie.com
    (Lead Attorney)

**PERKINS COIE LLP**
1888 Century Park E., Suite 1700
Los Angeles, CA 90067
Tel:   310.788.3215
Fax:   310.788.3399

Of Counsel,

Harry L. Gillam, Jr.
**GILLAM & SMITH, L.L.P.**
303 South Washington Ave
Marshall, TX 75670
Tel:   903.934.8450
Fax:   903.934.9257
email: gil@gillamsmithlaw.com

Attorneys for **MICROSOFT CORPORATION, GAMESTOP CORP., AND MICRO CENTER SALES CORPORATION**

May 25, 2011

By:   /s/ *Gabriel G. Hedrick*

    Gabriel Hedrick
    email: ghedrick@handal-law.com
    (Lead Attorney)

**HANDAL & ASSOCIATES**
1200 Third Ave.
Suite 1321
San Diego, CA 92101
Tel:   619.544.6400
Fax:   619.696.0323

Attorneys for **IMATION CORP., MEMOREX PRODUCTS, INC., STARLITE CONSUMER ELECTRONICS (USA) INC.**

May 25, 2011

By:   /s/ *Gary C. Ma*

   Gary C. Ma
   email: gary.ma@finnegan.com
   (Lead Attorney)

**Finnegan, Henderson,
Farabow, Garrett &
Dunner, llp**
3300 Hillview Avenue
Palo Alto, CA 94304-1203
Tel:   650.849.6785
Fax:   650.849.6666

Of Counsel,

Trey Yarbrough
**Yarbrough Wilcox, pllc**
100 E. Ferguson St., Ste. 1015
Tyler, TX 75702
Tel:   (903) 595-3111
Fax:   (903) 595-0191

Attorneys for **TTE Technology, Inc.**

May 25, 2011

By:   /s/ *John G. Bisbikis*

   (with permission)
   Kenneth J. Jurek
   email: kjurek@mwe.com
   (Lead Attorney)
   John G. Bisbikis
   email: jbisbikis@mwe.com

**McDermott Will & Emery
LLP**
227 West Monroe Street
Chicago, IL 60606-5096
Tel:   312.984.7767
Fax:   312.984.7700

J. Thad Heartfield (Texas Bar No. 09346800)
M. Dru Montgomery
**The Heartfield Law Firm**
2195 Dowlen Road
Beaumont, Texas 77706
Telephone: (409) 866-3318
Fax: (409) 866-5789
E-mail: thad@jth-law.com

Attorneys for **Office Depot, Inc.**

May 25, 2011

By:   /s/ *Max Moskowitz*
   Max Moskowitz
   email:
mmoskowitz@ostrolenk.com
   (Lead Attorney)

**OSTROLENK FABER LLP**
1180 Avenue of the Americas
New York, New York 10036
Tel:   212.382.0700
Fax:   212.382.0888

Of Counsel

Amanda Aline Abraham
**THE ROTH LAW FIRM**
115 N. Wellington
Suite 200
P.O. Box 876
Marshall, TX 75671-0876
903-935-1665
Fax: 903-935-1797

Attorneys for **SOUND AROUND, INC.**

May 25, 2011

By:   /s/ *Michael Albert*
   Michael Albert
   email:
michael.albert@wolfgreenfield.com
   (Lead Attorney)

**WOLF, GREENFIELD & SACKS, P.C.**
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
Tel:   617.646.8000
Fax:   617.646.8646

Attorneys for **STAPLES, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on May 25, 2011.

/s/ *Grant Kinsel*
Grant Kinsel